**ISHMAEL SAMEER IBRAHIM, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2004/101

District Court of the Virgin Islands

Division of St. Croix

November 3, 2005

DARWIN K. CARR, ESQ., St. Croix, U.S.V.I., *for Appellant*.

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *for Appellee*.

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and HOLLAR, *Judge of the Superior Court, Sitting by Designation*.

## MEMORANDUM OPINION

(November 3, 2005)

The appellant brings this appeal from his conviction for grand larceny, forgery and obtaining money under false pretenses, challenging the sufficiency of the evidence at trial.

For the reasons which follow, this Court will reverse the appellant's conviction for forgery and affirm his conviction in all other respects.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

Ishmael Sameer Ibrahim ("Ibrahim" or "appellant") was initially charged under an 11-count amended Information, stemming from several separate incidents in which he was accused of inducing several individuals to pay him money for merchandise by falsely representing himself to be a furniture salesman and of taking and endorsing checks belonging to other individuals. Specifically, the 11-count amended criminal Information charged him as to each of the victims as follows:

### 1. Friedenatahl Moravian Church ("the church transaction"):

The Information charged Ibrahim with committing forgery, grand larceny and obtaining money under false pretense (Counts I-III), as to the Friedenstahl Moravian Church ("the church") by: fraudulently making out a check to himself for $1,000 on the church's account; cashing said check and taking its proceeds of $1,000; and making out another check to himself, in the same amount, on the church's account.

### 2. Silverio Avila ("the Avila transaction"):

The Information charged Ibrahim with committing forgery, grand larceny and obtaining money under false pretenses (Counts IV-VI) as to Silverio Avila ("Avila") by: forging the endorsement on a retirement check belonging to Avila without authorization and stealing said retirement check valued at $350.47 and defrauding another by forging said check and collecting its proceeds.

### 3. Marie Jean Agustine ("the Agustine transaction"):

The Information charged Ibrahim with obtaining money under false pretenses and grand larceny (Counts VII-VIII) against Marie Agustine ("Agustine") by fraudulently offering to sell furniture to her, thereby inducing her to turn over money in excess of $400 for furniture he never delivered; and for taking more than $100 from Agustine in that transaction.

### 4. George Davis and/or Irene Ferrella Davia ("the Davis transaction"):

The Information charged Ibrahim with obtaining money under false pretenses (Count IX), charging he fraudulently offered to sell furniture to George and/or Irene Davis ("Davis") and induced them to pay him $200 as a deposit for furniture he never delivered.

### 5. Wilbert Wilkerson McCoy ("the McCoy transaction"):

The Information charged Ibrahim with obtaining money under false pretenses and grand larceny (Counts X-XI) as to Wilbert McCoy ("McCoy") by fraudulently offering to sell a freezer to McCoy and

inducing him to pay the appellant $500 for said freezer which the appellant never delivered, and by stealing said $500.

[*See* Supplemental Appendix contained in Br. of Appellee ("Supplemental App.") at 1-4].

Following trial by jury, Ibrahim was found not guilty of Count I of the information which charged forgery in connection with the church transaction. Counts II and III, which also related to the church transaction, were also dismissed by the court. Ibrahim was, therefore, convicted of three counts of grand larceny under 14 V.I.C. §§ 1081 and 1083(1); one count of forgery under 14 V.I.C. § 791(1), and; four counts of obtaining money under false pretenses, in violation of 14 V.I.C. § 834(2). [Joint Appendix ("J.A.") at 119]. His conviction related only to the Avila, Agustine, Davis and McCoy transactions. This timely appealed followed.

For the following reasons, this Court holds that Ibrahim waived his right to appeal his conviction of grand larceny and obtaining money under false pretenses as it relates to the Avila, Davis and McCoy transactions. Having found the evidence of forgery, in a separate count, in the Avila transaction insufficient, we will reverse Ibrahim's conviction in that regard. However, we will affirm his conviction in all other respects.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

In reviewing the sufficiency of the evidence to support a conviction, we determine whether the evidence and the inferences that may be drawn therefrom, viewed in the light most favorable to the Government, is such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt of every element of the offense. *See Abiff v. Gov't of the V.I.*, 313 F. Supp. 2d 509, 511 (D.V.I. App. Div. 2004) (citations omitted). An appellate court may disturb the jury's verdict "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." *Id.*; *see also, United States v. United States Gypsum Co.*, 600 F.2d 414, 416-17 (3d Cir.), *cert. denied*, 444 U.S. 884 (1979); *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992) ("Appellate reversal on the grounds of

insufficient evidence should be confined to cases where the failure of the prosecution is clear.").

■ Although the evidence need not be inconsistent with every conclusion save that of guilt, and circumstantial evidence is no less probative than direct evidence, the nexus between the evidence and the guilty verdict must, nonetheless, be "logical and convincing." *Government of V.I. v. Williams*, 739 F.2d 936, 940 (3d Cir. 1984) (citations omitted).

## B. Appellant's Brief Insufficient to Obtain Review of the Avila, Davis and McCoy Charges.

Before reaching the crux of the issues raised on appeal, we must make a threshold determination of the issues for which review may actually be obtained based on the state of the current record and the arguments submitted.

Ibrahim raised issues in his appellate brief that were not decided below or for which there was no conviction. Moreover, he fails to present arguments on some issues and, in some cases, attempts to do so for the first time in his reply brief. However, because the issues and arguments in Ibrahim's appellate brief were limited to his conviction related to the Augustin transaction and the forgery charge in the Avila transaction, those are the only issues this Court will consider.

■■ To properly obtain review, an appellant has a duty to outline in his main appellate brief the issues for which review is sought, and the issues thereby listed shape the parameters of the appellate court's consideration. *See* V.I.R. APP. P. 22. Moreover, an appellant is bound to submit arguments in support of the issues presented, supported by legal authorities and applied to the facts reflected on the record. *See* V.I.R.A.P. 22(a)(3), (5) and (d) (noting responsibility of appellant to state, in his main brief, the issues for review and arguments with authorities in support thereof, as well as references to the record); V.I.R.A.P. 20 (noting that all briefs must conform with the Rules of the Appellate Division). A reply brief is intended only to provide an opportunity for an appellant to respond to the arguments raised in the appellee's brief; it is not intended as a forum to raise new issues or theories not argued in the main brief. Accordingly, issues not argued or presented with no more than a cursory reference in the appellant's main brief are deemed waived. *See United States v. Voigt*, 89 F.3d 1050, 1064 (3d Cir. 1996) (noting issues or theory not identified in brief, as required by applicable federal

appellate rule mirroring V.I.R.A.P. 22, constituted waiver) (citations omitted); *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) (declining review of issue mentioned just "casually in one sentence," noting that under parallel provision in FED. R. APP. P. 28(a)(3), (5), "When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.") (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 182-83 & n.3 (3d Cir. 1993); *Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1011 (3d Cir. 1991); 16 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3974, at 421 (1977 & Supp. 1993, at 690) (issue must be raised in both the issues and argument sections of the brief to obtain review); *Lunderstadt v. Colafella*, 885 F.2d 66, 78 (3d Cir. 1989) (raising issue for first time in reply brief insufficient to preserve issue for review); *Daggett v. Kimmelman*, 811 F.2d 793, 795 (3d Cir. 1987) (same)).

■ An appellant's belated arguments made for the first time in the reply brief are also insufficient to preserve those issues for appeal. *See Lunderstadt*, 885 F.2d at 78; *see also, Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991) (noting that "a passing reference to an issue in a brief will not suffice to bring that issue before this court on appeal") (citations omitted); *Kost*, 1 F.3d at 182 and n.3 (noting argument raised for first time in reply brief is insufficient to preserve issue for review); *compare, In re Adornato*, 301 F. Supp. 2d 416, 420 n.9, 45 V.I. 448 (D.V.I. App. Div. 2004) (declining to address new arguments raised in reply brief).

In his main brief, Ibrahim indicated he was presenting the following three issues for review:

> 1) Whether "[t]here was insufficient evidence before the trial court to convict Appellant of Grand Larceny because the record was void of any evidence of Appellant's specific intent to permanently deprive the personal property of another."

> 2) Whether "[t]here was insufficient evidence before the trial court to convict Appellant of Obtaining Money by False Pretenses because the record was void of any evidence of Appellant's specific intent to defraud any person of money or property."

3) Whether "[t]here was insufficient evidence before the trial court to convict Appellant of Forgery because the record was void of any evidence that any checks tendered for payment were altered or that Appellant had any knowledge that any checks were altered."

[Appellant's Br. at ii]. In his argument, which amounts to approximately two paragraphs dedicated to each of the above-listed issues, the appellant argued as follows:

1) As to Issue No. 1, Appellant argued in his appellate brief only that evidence was insufficient to sustain his conviction where neither Avila nor Agustine had paid for the furnishings in full and his duty to turn over the goods never ripened, thereby vitiating any claim he intended to permanently deprive the owners of their property. [Br. of Appellant at 6-7].

Appellant obviously misapprehends the charges and the evidence at trial with regard to the Avila transaction, as he was never charged in connection with obtaining money for furniture not delivered to the Avilas. Rather, the charges and the resulting conviction surrounding the Avila transaction were limited to Ibrahim's endorsement and use of a retirement check.

Apparently in response to the Government's identification of these shortcomings in its brief, the appellant attempted in his reply brief to recast the issues to spread a wider net that encompasses a challenge to the evidence on all counts involving grand larceny and any and all evidence regarding intent, without offering any specific arguments regarding the particular charges as to each victim, authority or references to the challenged portions of the record. [*See* Reply Br. at 9-10]. However, apart from this brief reference to the issue, the appellant offered no argument or authority regarding the insufficiency in the evidence of intent to permanently deprive Mr. Avila of his retirement check, as charged in the information.

2) As to Issue No. 2, the appellant reiterated the same argument posited for Issue No. 1, that there was insufficient evidence of obtaining money under false pretenses in both the Avila and Agustine transactions, where neither party had paid their balances in full to give rise to a duty to make delivery. [Br. of Appellant at 8].

Again, it should be noted that the charge of obtaining money under false pretenses as to Avila surrounded the taking of the retirement check;

thus, there is no conviction as to the asserted facts. Accordingly, as to Issue No. 2, as in Issue No. 1, we will limit our review to the arguments posed as to Agustine.

3) As to Issue No. 3, the appellant argued his conviction for forgery was based on insufficient evidence where there was no evidence of a specific intent to alter "any check from the Moravian Church (count III) or Mr. Avilla's [sic] retirement check (count VI)." He additionally argued that "the record is absolutely void of any evidence to suggest that Appellant altered any check from the Moravian Church or Mr. Avilla's retirement check." [Br. of Appellant at 9].

Incredibly, Ibrahim posed these arguments despite the fact that all counts related to the church transaction were dismissed at trial. Thus, this issue is moot. Despite the paucity of argument as to the appellant's forgery conviction related to the Avila transaction, we will nonetheless grant review on that issue but decline review as to the other issues noted above.

The appellant's attempt to revive some of his arguments in his reply brief is also not sufficient to obtain review. In his reply brief, Appellant attempts to fill in the arguments left blank in his brief by adding arguments to Issues Nos. 1 and 2 regarding the Avila check. He additionally attempts to include arguments to attack the evidence for his conviction related to the McCoy and Davis transactions, which were not even mentioned in his appellate brief, [Reply Br. at 11-12], arguing that, notwithstanding his failure to argue the specific issues in his brief, review is appropriate because his appellate brief addresses all of the evidence of grand larceny, obtaining money by False Pretense and Forgery, and, therefore, incorporates any and "all counts where the Appellant was found guilty of these crimes without sufficient proof of intent." [Id.]. In that regard, Appellant argues that, notwithstanding his failure to argue the specific issues in his brief, review is appropriate because his appellate brief addresses all of the evidence of grand larceny, obtaining money by False Pretense and Forgery, and, therefore, incorporates any and "all counts where the Appellant was found guilty of these crimes without sufficient proof of intent." [Reply Br. at 12].

In view of the authorities noted above, and the extreme shortcomings in this case, the arguments surrounding Ibrahim's conviction for grand larceny and obtaining money by false pretenses with regard to the

597

McCoy, Davis and Avila transactions are deemed waived.[1] Accordingly, our review is limited to the Agustine transaction and the sufficiency of the evidence as to the forgery charge in the Avila transaction. We discuss each issue *seriatim.*

## C. The Evidence Was Sufficient for Conviction of Grand Larceny and Obtaining Money Under False Pretenses.

The crime of grand larceny is established where it is shown there was an intentional and unlawful taking or carrying away of personal property of another valued at more than $100, done with the specific intent to permanently deprive the owner of that property. *See* 14 V.I.C. §§ 1081, 1083(1); *see also Abiff v. Gov't of the V.I.*, 313 F. Supp. 2d 509, 511-12 (D.V.I. App. Div. 2004) (citing *Government of V.I. v. Brown*, 685 F.2d 834, 837-38 (3d Cir. 1982)) (noting with approval the elements as presented to the jury, although noting defect in charging instrument). We are mindful of the limitations in proving intent with direct evidence, given its reliance on the state of mind of the actor, and recognize that element can ordinarily be proved only by circumstantial evidence. Such circumstantial evidence is no less probative of the accused's guilt than direct evidence, however, and it is left to the factfinder to assess the facts and circumstances of the defendant's conduct in determining whether he acted with the requisite intent. *See e.g. Government of V.I. v. Edwards*, 903 F.2d 267, 270-71 (3d Cir. 1990) (circumstantial evidence of theft); *Government of V.I. v. Greene*, 708 F.2d 113, 115-16 (3d Cir. 1983) (conviction based on circumstantial evidence of burglary sustainable, under the totality of circumstances).

---

[1] This case represents a classic example of waiver and an appellate brief that approaches the sanctionable. This Court takes this opportunity to remind counsel of his responsibility to fully brief the issues and to include argument for each issue, supported with authorities and references to the record. Even more importantly, counsel should at minimum be familiar with the issues being appealed, to avoid a waste of precious time reviewing issues for a conviction that never occurred.

The submission of such a barebones brief, with no attempt at argument or research in hopes the Court will identify and flesh out the proper issues for counsel is unacceptable and, frankly, a waste of judicial resources. The attempt to then fill in the blanks with new arguments in the reply brief is equally deplorable. Every submission to this Court must reflect some level of effort and diligence in seeking out the correct law and arguments applicable to the case, and an intimate familiarity with the facts. This Court will not engage in counseling counsel, nor will it entertain such inadequate filings.

In the case *sub judice,* the appellant argues the evidence at trial fell short of establishing the intent element as to the Agustine transaction, where Agustine never paid her balance in full, to give rise to Appellant's duty to deliver the furniture. Under the facts of this case, as developed below, we find this argument unavailing.

Agustine testified at trial that the appellant came to her home on March 25, 2001 and represented himself as a furniture salesman acting on behalf of his brother at Best Furniture. [J.A. at 19]. Appellant showed her a furniture catalog from which he told her she could purchase goods. [*Id.*]. Agustine selected a bed and headboard, at a cost of $650 and, at the appellant's request, paid a cash deposit of $100. [*Id.*]. A receipt evidencing that payment was admitted at trial. Later that evening, however, Agustine turned over another $50 to the appellant after he contacted her and told her "the company" determined her initial deposit was insufficient. [*Id.* at 20].

The following week, Appellant again returned and told Agustine the furniture she ordered had arrived on island and that he required full payment. However, Agustine testified the appellant agreed to accept a payment of $330, with the balance due upon delivery of the furniture. [J.A. at 20, 23]. Thus, the evidence was that Agustine paid at least $480 to the appellant. When appellant did not return, Agustine attempted unsuccessfully to contact him through a telephone number he provided and, when that failed, she contacted Best Furniture. It was then that Agustine learned the appellant did not represent that company. She said she then filed a report with the Department of Licensing and Consumer Affairs.

Ibrahim admitted at trial he approached Agustine and others with offers to sell furniture and acknowledged having received money from her, although he disputed the amount. [J.A. at 92-93]. He also admitted he never delivered any furniture to her. However, he termed Agustine's arrangement as a "layaway plan" and explained he never made delivery because he never received full payment for the furniture. He also pointed to a series of personal problems befalling him, including illness and deaths in his family, a six-month stay in Jerusalem, and his incarceration in another jurisdiction,[2] which took him away from the island for a

---

[2] Ibrahim testified he was incarcerated for eight months in New Jersey, followed by a probationary period, for writing two checks for $17,000 to a casino there. [J.A. at 86].

prolonged period and prevented him from following up on the incomplete sales. [J.A. at 85-86, 111]. He also testified to problems with a furniture distributor in Miami with whom he was dealing, which left him in a lurch after he made a $17,000 payment for goods. [J.A. at 85-86]. Ibrahim testified that upon his return to the territory, he repaid some customers their deposits, although he could not give the names of those customers and noted none of those were the victims involved in this case.

■ Taken as a whole, these circumstances pointing to misrepresentations by Ibrahim regarding his role in Best Furniture and the arrival of the furniture on the island, his acceptance of payment toward that furniture and his failure, even years after receiving such payments, to make contact with Agustine, deliver any goods or to return her payment, coupled with Agustine's inability to contact him or anyone else at the telephone number he provided, could permit a jury to reasonably infer the appellant bore the requisite intent to permanently deprive Agustine of her money.[3]

Ibrahim's explanation regarding the reasons for his failure to deliver goods for the money he received did not compel a jury determination in his favor on the issue of intent, given all of the evidence at trial.[4] Rather, as factfinder, the jury had the sole responsibility to weigh the credibility of the witnesses and assess the evidence, and was not compelled to credit that testimony. *See e.g., United States v. Clifford*, 704 F.2d 86, 89 (3d Cir. 1983).

---

[3] The evidence also sufficiently established that Ibrahim intentionally took money from Agustine in excess of $100 for furniture he never delivered.

[4] In his reply brief, Appellant takes issue with the trial court's exclusion, or curtailing, of his explanatory testimony which, he argues, would have supported his case. [Reply Br. at 13-14]. Again, this issue was not raised in the appellant's brief or in his argument and this Court will, therefore, not consider it. Even if we reached the issue, however, we would find it to be without merit.

Appellant points to one instance in which the trial court sustained an objection to his narrative testimony regarding various personal hardships and to having lost his two children in an accident. [J.A. at 86-87]. However, the trial court had previously admitted, without objection, lengthy testimony regarding Ibrahim's troubles, including the fact of losing his two children. [*Id.* at 86, 111]. Although first sustaining a later objection regarding Ibrahim's reported attempt to get from the Department of Licensing and Consumer Affairs the names of the individuals to whom he owed money based on the relevance to the current victims, the Court later permitted the defense to further develop that testimony as it related to the current victims. [J.A. at 89-90].

For similar reasons, we also reject the appellant's challenges to the evidence supporting his conviction of the charge of obtaining money under false pretenses arising from the Agustine transaction.

██ The plain language of the statute under which Ibrahim was charged makes it an offense to: 1) knowingly and designedly, 2) by false or fraudulent representation or pretenses, 3) defraud any other person of money or property. *See* 14 V.I.C. § 834. Those elements were sufficiently shown by evidence Ibrahim falsely represented himself to be a furniture salesman who would deliver goods on purchase, thereby inducing Agustine to part with her money, and where no goods were ever delivered in exchange for such payment. The fact that the victim never paid the full amount due did not preclude that finding, as Appellant suggests, given the testimony that such payment was to be made at the time of delivery and the evidence that no delivery or further contact by the appellant ever occurred. *See e.g., United States v. White*, 611 F.2d 531, 539 (5th Cir. 1980) (noting that intent to defraud may be shown be surrounding facts and circumstances); *Greene*, 708 F.2d at 115-16 ("So long as the totality of circumstantial evidence relating to intent would enable a reasonable factfinder to infer such intent beyond a reasonable doubt, the due process requirement for sufficiency of the evidence on that element of the offense is satisfied.") (quoting *United States v. Cooper*, 567 F.2d 252, 253-54 (3d Cir. 1977)).

## D. Evidence Insufficient to Establish that Appellant Forged the Avila Check.

Appellant attacks his forgery conviction, arguing the trial evidence was insufficient to prove he altered that check or that the forged signature was his.

██ Ibrahim was charged in Count Four of the Information with having forged an endorsement signature on Avila's retirement check, with the intent to defraud, in violation of 14 V.I.C. § 791(1). That statute makes it a crime to falsely make, alter or forge any check, with the intent to defraud. *Id.* To establish guilt for that crime, the Government was required to show that there was a false making or material alteration of a writing with intent to defraud another. *See United States v. McGovern*, 661 F.2d 27, 29 (3d Cir. 1981) (applying similar common law definition to federal forgery statute); *United States v. Reagle*, 740 F.2d 266, 268-70 (3d Cir. 1984) (noting that the elements of that crime focus on the

instrument itself and the mens rea of the signatory at the time of the signing); *compare, Government of V.I. v. Venzen*, 424 F.2d 521, 522, 7 V.I. 488 (3d Cir. 1970) (noting similar elements under section 791(2)).

 A false making is shown where the appellant completes or makes a writing so that it purports to be the act of another, without authorization. BLACK'S LAW DICTIONARY 650 (6th ed. 1990). The source of a forged signature may be proved through the jury's comparison of a proven handwriting exemplar with the forged document, and expert testimony need not be adduced. *See* FED. R. EVID. 901(b); *see also United States v. Clifford*, 704 F.2d 86, 89-90 n.5 (3d Cir. 1979). The intent to defraud may be shown from the surrounding facts and circumstances, including knowledge of the forgery, exclusive possession of or exclusive access to a forged check, and evidence the defendant executed an unauthorized endorsement or passed an instrument he knew to be false. *See White*, 611 F.2d 531, 539 (5th Cir. 1980); *United States v. Rosario*, 118 F.3d 160, 163-64 and n.7 (3d Cir. 1997) (noting jury could infer intent to defraud and knowing and wilful conduct from evidence the defendant forged the instrument).

The sole evidence at trial was that, when Ibrahim showed up at the Avila's home offering to sell furniture to them, he was invited inside and spent less than one-half hour talking with the Avilas and looking at their bar area to determine the type of bar stools Mrs. Avila needed. The evidence was that the Avilas were at all times in the home with Ibrahim. Later that day, Mrs. Avila discovered that one of three checks which she had left on the bar was missing. The missing retirement check was later cashed on a forged endorsement at the Samia Meat Market, whose proprietor, Ford Ibrahim, is admittedly a friend of Ibrahim. [J.A. at 109-10].

 Mr. and Mr. Avila both testified they did not endorse the retirement check with the name, "Silverio Avila," nor authorized anyone else to do so. However, there was no evidence establishing that Ibrahim ever held possession of the check or that he or another person directed by him presented the check to the Samia Meat Market, or any other evidence linking Ibrahim to the forged instrument to permit a reasonable inference that he committed the forgery.[5] Therefore, a guilty verdict

---

[5] In developing its case against Ibrahim for obtaining money under false pretenses in the Davis transaction, the Government admitted into evidence a receipt to Davis,

acknowledged to be written by Ibrahim. [Supplemental App. at 7; J.A. at 66, 109-10]. The Government now argues that similarities in the Davis receipt and the forged signature support a finding that the forged signature was Ibrahim's. [See Br. of Appellee at 16-17]. The appellant counters that the Government's attorney is ill-equipped to analyze the two writings and that expert testimony was required.

While handwriting expert testimony is not a necessary requisite to a forgery conviction, and such analysis may be left to the jury which has before it a proven exemplar with which to compare the forgery, *see* FED. R. EVID. 901(b), there must nonetheless be evidence which, viewed in totality, would permit a jury to determine beyond a reasonable doubt that the accused was the source of the forged endorsement. *See e.g.*, *Rosario*, 118 F.3d at 163-64 (noting, in reviewing forgery conviction under similar statutory language and elements under 18 U.S.C. § 510(a), that although a handwriting expert's equivocal testimony regarding the source of the forged signature would have been insufficient for conviction standing alone, when coupled with evidence that the accused had possessed the check bearing the forged endorsement, the evidence was sufficient to permit a jury inference that he was the source of the forgery) (citing *United States v. Richardson*, 755 F.2d 685 (8th Cir. 1985) (equivocal handwriting analysis evidence sufficiently buttressed by evidence showing possession or access to the victim's home and fingerprints on forged check); *United States v. Rivamonte*, 666 F.2d 515 (11th Cir. 1982) (weighing the evidence of possession, which was established by the accused's fingerprints on the check, in determining the evidence was sufficient for forgery, notwithstanding equivocal expert testimony); *United States v. Henderson*, 693 F.2d 1028 (11th Cir. 1982) (reversing check forgery conviction based solely on ambiguous handwriting testimony and evidence showing that the defendant's wife had cashed the stolen check, where no there was no evidence that Henderson had ever possessed the check); *Chatman v. United States*, 557 F.2d 147, 148 (8th Cir. 1977) (upholding check forgery conviction because accessibility of payee's mailbox to defendant provided corroboration for less than conclusive expert handwriting testimony)); *compare Sneed v. Smith*, 670 F.2d 1348, 1352-53 (4th Cir. 1982) (finding evidence that checkbooks were stolen from a room in which Defendant was present; that he drove another person to a market and gave her a forged check taken from one of the stolen checkbooks, which she presented, was insufficient for forgery charge, though sufficient to show utterance of a forged check); *United States v. Galvin*, 394 F.2d 228, 230 (3d Cir. 1968) (noting, in considering forgery offense under federal law with language similar to section 791, that "actual and exclusive possession" of fruits of crime supports inference of guilty knowledge to establish "forgery or any other crime in which either a chief or a subordinate result might be the possession of a material article"; and finding evidence was sufficient to establish forgery given the defendant's possession of stolen checks and his willingness to accept only a small portion of their value in poker game) (citations omitted); 108 A.L.R. 5th 593 ("Possession and an attempt to pass a forged check creates a permissible inference that the person in possession either forged it or knew that it was not genuine absent a explanation satisfactory to the jury.") (citations omitted); *cf. United States v. Ranta*, 482 F.2d 1344, 1346 (8th Cir. 1973) (finding the foundation for comparison of an admitted exemplar by the jury properly laid where the defendant's fingerprint on the missing check sufficiently connected him with the forged endorsement).

could have been achieved only through a web of inferences and conjecture. Accordingly, we are constrained to reverse Ibrahim's conviction for forgery in connection with the Avila transaction.

## III. CONCLUSION

For the foregoing reasons, the appellant's conviction for forgery connected with the Avila check will be reversed. His conviction for the offenses related to the Agustine transaction will be affirmed. However, we decline review of his conviction for grand larceny and obtaining money by false pretenses arising from the McCoy, Davis and Avila transactions, having determined he has waived the right to such review.