**JEFFREY J. PROSSER, DAWN PROSSER, and JEFFREY B.C. MOORHEAD, Appellants**

**v.**

**PUBLIC SERVICES COMMISSION OF THE UNITED STATES VIRGIN ISLANDS, Appellee**

S. Ct. Civ. No. 2010-0067

Supreme Court of the Virgin Islands

March 1, 2012

391

JEFFREY B.C. MOORHEAD, ESQ., Jeffrey B.C. Moorhead, P.C., St. Croix, USVI, *Pro se and Attorney for Appellants.*

RAYMOND T. JAMES, ESQ., AAG, ERIKA M. SCOTT, ESQ., AAG, Department of Justice, St. Croix, USVI, *Attorney for Appellee.*

J. DARYL DODSON, ESQ., Moore, Dodson & Russell, P.C., St. Thomas, USVI, *Attorney for Intervenors/Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(March 1, 2012)

CABRET, *Associate Justice.* On May 5, 2010, the appellee, Public Services Commission of the United States Virgin Islands ("PSC"), approved the transfer of three utility companies to a wholly owned subsidiary of the intervenor, the National Rural Utilities Cooperative Finance Corporation ("CFC"). The appellants Jeffrey Prosser, Dawn Prosser and Jeffrey Moorhead (collectively "the Appellants"), as ratepayers of the utility companies, appealed that order to the Superior Court, arguing that the PSC failed to consider factors the Appellants considered important to the transfer issue. The Superior Court affirmed the PSC's transfer order. The Appellants now appeal the Superior Court's order affirming the PSC's decision to this Court. The Appellants set forth a plethora of arguments against the transfer approved by the PSC, but only raise one issue that has arguably been adequately preserved for our

393

review, namely whether the PSC issued arbitrary findings of fact by failing to consider letters written by appellant Jeffrey Prosser. For the reasons set forth below, we affirm the Superior Court.

## I. FACTS AND PROCEDURAL HISTORY

The factual and procedural history of this case is long and complicated. The parties' relationship and controversy begins long before the PSC filing and Superior Court's order being reviewed. We review the facts chronologically.

### A. Pre-PSC filing

Innovative Communication Corporation ("ICC") was forced into involuntary bankruptcy on July 31, 2006 by its creditors.[1] Jeffrey Prosser, one of the appellants in this case, was the *de facto* controller of ICC prior to its entrance into involuntary bankruptcy. Regardless, ICC had three wholly owned subsidiaries that the bankruptcy court grouped together, with other assets not relevant to this appeal, as "Group 1 Assets" and that court required the bankruptcy trustee to market those assets for sale to meet ICC's bankruptcy debt. The relevant "Group 1 Assets" consist of Virgin Islands Telephone Corporation, d/b/a Innovative Telephone ("VITELCO"), Caribbean Communications Corp., d/b/a Innovative Cable TV — St. Thomas — St. John ("Innovative Cable STT/STJ"), and St. Croix Cable TV, Inc. d/b/a/ Innovative Cable St. Croix ("Innovative Cable STX," collectively with Innovative Cable STT/STJ as the "Cable Companies," collectively with Innovative Cable STT/STJ and VITELCO as the "Regulated Entities"). Even though the Regulated Entities are not themselves in bankruptcy proceedings, because they are assets of ICC, the bankruptcy court required that the bankruptcy trustee place the Regulated Entities for sale and seek bidders to meet ICC's creditor obligations.

ICC's primary creditor is the Rural Telephone Finance Corporation ("RTFC"), which is an affiliate of CFC.[2] The RTFC has a judgment against ICC for $524,910,065.00. During the bidding process for the Regulated Entities, RTFC made a "credit bid." A credit bid is a

---

[1] The bankruptcy proceeding is ongoing in the Virgin Islands District Court at bankruptcy case number 07-30012JKF. (J.A. 35.)

[2] CFC is a "member-owned, not-for-profit, non-governmental cooperative financial institution focused on lending to its rural-utility members." (J.A. 9.)

bankruptcy procedure which permits a creditor to bid a reduction in debt, rather than offer to pay cash for some property. After RTFC made its bid, it assigned its interest to its affiliate CFC. CFC, after negotiations with the bankruptcy trustee, structured the purchase so that the Regulated Entities would be owned by one of CFC's wholly owned subsidiary holding companies. The bankruptcy trustee, after a "fair, full and complete marketing process," considered RTFC's credit bid to be the highest and best bid. The bankruptcy court agreed and granted the trustee's interim motion to sell the Regulated Entities in compliance with the credit bid so long as the buyers could get regulatory approval of the sale.

Virgin Islands law requires that any sale of a public utility be approved by the PSC following statutorily mandated hearing procedures. *See generally* V.I. CODE ANN. tit. 30 §§ 1-45a. To satisfy these requirements, the bankruptcy trustee and CFC presented their agreement of sale and the interim order permitting the sale from the bankruptcy court in a joint application to the PSC, seeking consent to finalize the sale of the Regulated Entities to CFC.[3]

### B. The PSC Proceedings

In response to the joint application, the PSC opened a docket and made a specific, but exhaustive request for information from the trustee and CFC. To conduct the preliminary fact-gathering proceedings, the CFC appointed Ronald W. Belfon as the Hearing Examiner. On August 18, 2009, the Hearing Examiner identified specific issues that needed to be resolved and submitted for consideration to the PSC, and set a preliminary calendar for public hearings. In mid-August of 2009, the St. Thomas, St. John and St. Croix *Source*, along with the Avis and the *Virgin Islands Daily News*, ran articles featuring the Hearing Examiner's order containing guidelines for written submissions to the PSC. The order invited all members of the public and any other interested party to file written comments or submissions by August 27, 2009.

On October 15, 2009, the PSC posted a press release and public announcement that scheduled public hearings for November 3, 4, and 5, 2009 to take live testimony and commentary on the transfer of control

---

[3] During the pendency of the PSC proceedings, CFC also sought regulatory approval from the Federal Communications Commission to transfer the utilities. On December 7, 2009, the FCC granted the trustee's petition for federal regulatory approval of the proposed transfer.

over the Regulated Entities. The public announcement also reopened the opportunity for written public comment so long as they were received "in advance of the hearings."

At the November 3 and 4 public hearings on St. Thomas and St. Croix, the Hearing Examiner accepted the live testimony of a number of witnesses representing the interested parties. Each witness was required to give testimony under oath and was subject to cross examination. Only one member of the public testified at either hearing, and was neither placed under oath nor subjected to cross-examination. The Appellants did not provide written comments in advance of the hearings, nor did they appear at the hearings and give live testimony voicing any concern about the transfer of control proceedings. The Appellants did not seek to intervene in the action as a party.

On November 5, 2009, the last day of the public hearings, Prosser mailed, directly to the PSC Chairman rather than to the Hearing Examiner, a letter raising a plethora of issues and containing approximately 300 pages of material. On November 10, 2009, November 13, 2009, December 3, 2009, and January 25, 2010, Prosser mailed follow-up letters to the PSC Chairman containing additional issues and documents and requesting a special hearing to air his allegations. CFC's representatives, the representatives for the trustee, and the staff attorneys at the PSC all opposed the consideration of Prosser's materials as untimely and irrelevant and moved to strike them.

Negotiations between CFC and the PSC staff attorneys took much longer than originally anticipated, and the parties requested, and received, five separate extensions of time from the Hearing Examiner. On February 19, 2010, the PSC staff filed a "closing brief" with the Hearing Examiner, wherein they acknowledged that the negotiations had been successful on the majority of the issues originally identified by the Hearing Examiner, but that a few issues remained inadequately considered. In their "closing brief," the PSC staff attorneys were particularly concerned that the testimony offered at the public hearings and the pre-hearing testimony filed with the Hearing Examiner was insufficient to support all of the necessary findings of fact. Despite those concerns, however, on February 26, 2010, the PSC staff attorneys and the CFC filed a joint recommendation that the Hearing Examiner approve the proposed Transfer of Control Agreement that they had negotiated and send it to the PSC for final consideration. The Hearing Examiner accepted that

recommendation and, on March 12, 2010, set out proposed findings of fact and a proposed order along with a recommendation to the PSC to approve the Transfer of Control Agreement. On the same day, the Hearing Examiner granted the parties' motions to strike Prosser's assorted letters.

The PSC then advertised and scheduled additional public hearings to be held on May 4 and 5, 2010 to consider the Hearing Examiner's suggestions and ask questions of the parties. At the public hearings, the Commissioners of the PSC heard statements from the Hearing Examiner, representatives of the bankruptcy trustee, representatives of the CFC, and the PSC staff attorneys. Each Commissioner was given the opportunity, which most accepted, to question each party and to make statements on the public record of any concerns. The Commissioners, who had each received a copy of Prosser's letters, asked about several of the allegations included in them. (J.A. 2264-67 (pension funding allegation); 2373-75 (bribery allegation); 2379-90 (rate freeze allegation); 2385-86 (RICO allegation); 2390-91 (altered loan documents allegation); 2392-93 (conflict of interest allegation); 2395 (legal fees allegation).) The Commissioners also set aside time to hear any comments from the public on the matter. The Prossers did not attend either hearing. While Moorhead attended the May 5, 2010 hearing, he declined to make any comment.

At the end of the May 5, 2010 hearing, the Commissioners unanimously accepted the findings of fact proposed by the Hearing Examiner and ordered the transfer of the Regulated Entities. On the same day, the PSC Chairman memorialized the PSC's decision by signing the May 5, 2010 Order and Findings of Fact.

Under title 30, section 33 of the Virgin Islands Code, any person "affected by any final order or decision" of the PSC may file a petition for reconsideration within thirty days. On June 3, 2010, the Appellants, alleging they were affected as utility ratepayers, filed a petition for reconsideration alleging: (1) the Transfer of Control Agreement did not adequately address (a) the evidence to determine the cost of bringing the employee pension plans current, (b) the future employee levels at the Regulated Entities, (c) the overcharging for the utilities at the current rate, (d) the lack of an opening balance sheet, and (e) the lack of adequate capital expenditure; (2) the Hearing Examiner failed to corroborate the testimony of CFC's witnesses concerning CFC's financial capabilities; (3) the PSC failed to consider Prosser's letters; (4) the PSC failed to consider evidence concerning the conduct during the bidding process

before the bankruptcy court; (5) that VITELCO's access to capital markets would be compromised under the agreement; and (6) that the PSC failed to consider the bribery accusations leveled at the bankruptcy trustee's counsel. CFC and the bankruptcy trustee filed a joint opposition to the petition to reconsider.

The PSC held a public hearing on June 17, 2010 to consider the Appellant's petition to reconsider. Appellant Moorhead came to the meeting and provided argument, as did a representative from CFC and the bankruptcy trustee. At the end of the meeting, the PSC staff attorney informed the Commissioners that they had three options in dealing with the petition: affirm it, deny it, or allow it to be denied by operation of law by failing to act on it within thirty days of its filing.[4] The PSC did not take a vote at the meeting, and permitted the petition to be denied by operation of law. On July 7, 2010, the Appellants filed a timely notice of appeal to the Superior Court.

### C. The Superior Court Proceedings.

In their notice of appeal to the Superior Court, which apparently also functioned as the appellants' brief before the Superior Court, Appellants raised nineteen separate arguments as to why the PSC erred in permitting the transfer of the Regulated Entities to CFC. Of those, only one — the contention that the Transfer of Control Agreement was executed by Steven Lilly on behalf of the Regulated Entities without the authority to do so — was an issue of law. The remaining allegations contended that the PSC either failed to adequately take into account some fact or accused CFC of some kind of illicit misrepresentation before the PSC. On July 16, 2010, the Appellants filed two papers: an identical "supplement" and "amendment" to their notice of appeal adding the additional argument that the bankruptcy trustee, and not the Regulated Entities, signed the application for transfer of control.[5] On August 25, 2010, the Superior Court set a September 7, 2010 hearing date to consider its jurisdiction and the merits of the appeal. On September 3, 2010, the Appellants filed a

---

[4] "The Commission, within thirty days after the filing of [the petition to reconsider], shall either grant or deny it. Failure by the Commission to act upon such application within such period shall be deemed a denial thereof." 30 V.I.C. § 33.

[5] On August 11, 2010, the Appellants once again filed the exact same paper, titled a "supplement."

"pre-hearing" brief. On the morning of the hearing, the Appellants filed a "motion to remand," arguing that the PSC's failure to issue additional findings of fact after the petition for rehearing caused the record before the Superior Court to be incomplete.

At the September 7, 2010 hearing, although the Prossers did not appear, Attorney Moorhead appeared for the Appellants and argued only the grounds raised in his motion to remand and his supplement to the notice of appeal, that the record before the Superior Court was incomplete and that the bankruptcy trustee signed the application for transfer of control instead of the Regulated Entities.[6] On September 14, 2010, the Superior Court issued its final order and a memorandum opinion. In its opinion, the Superior Court determined: (1) that the record was complete and that the PSC was under no obligation to set out additional findings of fact to deny the motion to reconsider, (2) that the Appellants failed to show that any factual finding of the PSC was arbitrary, capricious or procured by fraud, and (3) the fact that the bankruptcy trustee signed the transfer of control application[7] in place of the Regulated Entities was a technical error that was insufficient to warrant reversal. Therefore, the Superior Court affirmed the PSC's May 5, 2010 order permitting the transfer of the Regulated Entities to CFC.

█ On September 16, 2010, the Appellants filed a timely notice of appeal to this Court. On appeal to this Court, the Appellants now argue that the Superior Court erred because: (1) the Transfer of Control Agreement fixed rates for four years in violation of 30 V.I.C. §§ 2 & 20; (2) the PSC failed to abide by 1 V.I.C. § 251 et seq., by holding private rate negotiations; (3) the Transfer of Control Agreement was invalid because the Regulated Entities did not sign the application for transfer of

---

[6] There was also a discussion, not relevant to this appeal, of (1) whether the Appellants had made the necessary showing of irreparable financial harm to justify a stay of the PSC's order permitting the transfer and (2) whether the Superior Court should grant the CFC's motion to intervene.

[7] In its opinion, the Superior Court stated that "[a]t the hearing, Appellants contested [the bankruptcy trustee's] authority to sign the Transfer of Control Agreement." (J.A. 4872.) However, a review of the record discloses that, although Appellants raised a signature issue as to the Transfer of Control Agreement at other times, at the hearing before the Superior Court the only signature issue brought to the attention of the Superior Court was the one dealing with the application to begin the transfer of control proceedings. Therefore, it appears that the Superior Court's reference to the Transfer of Control Agreement, as opposed to the application, was an inadvertent typographical error.

control; (4) CFC failed to provide sufficient assurance that the pension fund contributions for the Regulated Entities will be brought up to date as required by 30 V.I.C. § 43a(c) because wholly owned subsidiary companies, and not CFC directly, are purchasing the Regulated Entities; (5) the PSC failed to consider Prosser's letters; (6) the PSC's findings of fact were based on fraudulent representations by CFC; and finally (7) the PSC violated the Appellant's due process rights by striking Prosser's letters without sufficient notice or an opportunity to be heard.[8]

---

[8] Additionally, the Appellants' brief contends that "the Superior Court denied Appellants [sic] procedural due process by changing a scheduled status conference for September 7, 2010 to a full hearing on the issues . . . the business day before the scheduled hearing." (Appellant's Br. 2.) However, despite identifying this argument, the Appellants provide no additional support or argument outside of this one sentence to support their claim of a procedural due process violation. Generally, appellate courts do not consider issues that are identified but not supported by argument, instead treating those arguments as waived. *See* V.I. S. CT. R. 22(a)(5) (requiring argument in the briefs to be supported by citations to pertinent portions of the record and appropriate legal authorities) and 22(m)(3) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citations to legal authority[] are deemed waived for the purposes of appeal . . . ."); *Dowdye v. People*, 55 V.I. 736, 750 n.13 (V.I. 2011) ("[I]ssues raised in a notice of appeal but not argued in an appellant's brief are waived."); *Ibrahim v. Gov't of the V.I.*, 47 V.I. 589, 594 (D.V.I. App. Div. 2005) (noting that "[t]o properly obtain review, an appellant has a duty to outline in his main appellate brief the issues for which review is sought, and the issues thereby listed shape the parameters of the appellate court's consideration. Moreover, an appellant is bound to submit arguments in support of the issues presented, supported by legal authorities and applied to the facts reflected on the record.") (citation omitted); *Edwards v. Gov't of the V.I.*, 47 V.I. 605, 617 (D.V.I. App. Div. 2005) ("Although identified as an issue in his brief, the appellant has offered no argument for his claim that his trial counsel's failure . . . amounted to ineffective assistance of counsel. Therefore, as the Government correctly notes, that argument is deemed waived."); *see also Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) (" '[A]bsent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations.' " (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1065 (3d Cir. 1991))); 16AA CHARLES A. WRIGHT, et al., FEDERAL PRACTICE & PROCEDURE § 3974.1 at 232-33 & n. 15 (4th ed. 2008) (collecting cases holding that failure to brief issues is waiver thereof). Additionally, we note that the Appellants never complained to the Superior Court that they were unprepared to proceed due to insufficient notice. Indeed, at the hearing, the Superior Court repeatedly requested that Appellants address the merits and, at the end of the hearing, asked if there was "anything else before we close" to which Attorney Moorhead answered "No, your Honor" rather than request a second hearing or additional time to address the merits. (J.A. 4667.) In light of the foregoing, we treat this argument as waived and decline to consider it further.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this civil appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The September 14, 2010 order from the Superior Court was a final order, because it "end[ed] the litigation on the merits . . . ." *Estate of George v. George*, 50 V.I. 268, 274 (V.I. 2008).

We review the trial court's determination regarding the PSC's order under a plenary standard, and apply the same test to the PSC's order that the Superior Court does. *See Atlantic Tele-Network Co. v. Public Servs. Comm'n of the V.I.*, 841 F.2d 70, 72 (3d Cir. 1988); *see also Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 187 (V.I. 2009). In doing so, we exercise plenary review over any issue of law. *See Williams-Jackson v. PERB*, 52 V.I. 445, 450 (V.I. 2009). However, we may not disturb any finding of fact by the PSC unless that finding is arbitrary, capricious, or procured through fraud. 30 V.I.C. § 35.

## III. DISCUSSION

### A. Most of the Appellants' arguments before this Court are not properly preserved for review.

Section 33 of title 30 of the Virgin Islands Code requires that before any PSC decision may be appealed to the Superior Court, the party wishing to appeal the decision must first file a petition to reconsider and state specifically the alleged errors the party wishes the PSC to reconsider. Furthermore, section 33 explicitly states that "[n]o public utility, or other person or corporation, shall in *any court* urge or rely on *any ground* not so set forth" in the petition to reconsider. 30 V.I.C. § 33 (emphasis added). The purpose of this section is clear — the Legislature wanted to give the PSC an opportunity to consider and react to any alleged errors before exposing its decisions to judicial review. Therefore, we cannot consider any issue unless it was originally raised before the PSC in the petition to reconsider.[9]

---

[9] Section 33 of title 30 of the Virgin Islands Code is identical to the section 34-604(b) of the District of Columbia Code in all of the relevant language for this appeal. The D.C. Court of Appeals has determined that § 34-604(b) requires that a petition to reconsider must be filed

The issues originally raised in the petition to reconsider were whether: (1) the Transfer of Control Agreement adequately addressed the evidence to determine (a) the amount necessary to bring the employee pension plans current, (b) the future employee levels at the Regulated Entities, (c) the overcharging of the current rate, (d) the lack of an opening balance sheet, and (e) the lack of adequate capital expenditure; (2) the Hearing Examiner failed to corroborate the testimony of CFC's witnesses concerning CFC's financial capabilities; (3) the PSC failed to consider Prosser's letters; (4) the PSC failed to consider evidence concerning the conduct during the bidding process before the bankruptcy court; (5) VITELCO's access to capital markets would be compromised under the agreement; and (6) PSC failed to consider the bribery accusations leveled at the bankruptcy trustee's counsel. The issues raised on appeal to this Court, on the other hand, include: (1) the Transfer of Control Agreement illegally fixed rates for four years; (2) the PSC illegally held private rate negotiations; (3) the application which initiated the transfer of control proceedings was invalid because the Regulated Entities did not sign it and therefore the proceedings before the PSC were "*void ab initio*;" (4) CFC failed to provide sufficient assurance that the pension fund contributions for the Regulated Entities will be brought up to date as required by 30 V.I.C. § 43a(c) because it is a wholly owned subsidiary, and not CFC directly, which is are purchasing the Regulated Entities; (5) the PSC failed to consider Prosser's letters; (6) the PSC's findings of fact were based on

to give the court jurisdiction over the appeal, but the "[n]o . . . person . . . shall in any court urge or rely on any ground not so set forth" language is not jurisdictional but a claims processing rule and subject to waiver by the PSC if the defense is not raised in a timely manner. *See Washington Gas Light Co. v. Pub. Serv. Comm'n of D.C.*, 982 A.2d 691, 700-02 (D.C. 2009). This Court's opinion in *Pichardo v. Benjamin*, however, interpreted section 70(a) of title 24 of the Virgin Islands Code, which has similar language to section 30 of title 33, and found it to be a jurisdictional requirement. *See Pichardo v. Benjamin*, S.Ct. Civ. No. 2007-0061, 2008 V.I. Supreme LEXIS 25, at *5 (V.I. Apr. 16, 2008) (unpublished), *aff'd*, 613 F.3d 87, 53 V.I. 936 (3d Cir. 2010). Nevertheless, the appellees have timely asserted this ground in their briefs and thus have not waived the issue. (*See, e.g.* Appellee Br. 19; Intervenor's Br. 15.) Where a party timely raises a claims processing rule that was violated by its opponent, we have no choice but to dismiss based on it. *See Gov't of the V.I. v. Martinez*, 620 F.3d 321, 328-29, 54 V.I. 900 (3d Cir. 2010) ("Upon proper invocation of the rule when a notice of appeal is filed out of time, we must dismiss the appeal."). Therefore, because the issue was timely raised by the appellees, it does not matter for the outcome of this case whether the "any ground not so set forth" language of section 33 is jurisdictional or a claims processing rule. Thus, we do not reach the question.

fraudulent representations by CFC; (7) the PSC's findings of fact were based on fraudulent representations made by a bribed witness in the Bankruptcy Court proceedings; and finally (8) the PSC violated the Appellant's due process rights by striking Prosser's letters without sufficient notice or an opportunity to be heard.

■■ A simple comparison indicates that the Appellants never raised the first, second, third, fourth,[10] sixth, seventh,[11] or eighth issues currently on appeal before the PSC. Therefore, pursuant to statutory mandate, we are unable to consider these issues any further. *See* 30 V.I.C. § 33. However, the third argument, which asserts that the proceedings before the PSC were *void ab initio* because the Regulated Entities did not sign

---

[10] The petition for reconsideration did raise an issue as to whether the eight million dollars pledged to the pension plans under the Transfer of Control Agreement was sufficient. (J.A. 2440.) To the extent that the current argument, discussing the CFC's wholly owned subsidiaries and assurances under 30 V.I.C. § 43a(c), *mentions* the original argument, we will briefly address it. (Appellant Br. 22.) The Transfer of Control Agreement requires a loan to the Regulated Entities of eight million dollars to bring the pension plans up to date. The Appellants, citing to language from the bankruptcy proceeding discussing a presentation from the Pension Benefit Guaranty Corporation, argue that this amount should be twenty million dollars. (Appellant Br. 22.) However, in response to the Appellants' petition for reconsideration, the Pension Benefit Guaranty Corporation wrote directly to the PSC to ensure them that the twenty million dollar figure is only a figure in the event that the pension plans are terminated and that eight million dollars is all that is required to bring the plans current. (J.A. 3197-98.) In light of that letter, which the PSC had at the time it denied the petition for reconsideration, we cannot find that the PSC's decision to dismiss the petition for reconsideration on these factual grounds was arbitrary, capricious or induced by fraud.

[11] The petition for reconsideration also raised an issue as to the bribed witness before the Bankruptcy Court, but only argued that the PSC failed to adequately consider the issue. (J.A. 2444-46.) On appeal, the Appellants have changed tactic and now claim that the bribed witness's testimony shows that the PSC's findings of fact were "procured through fraud" in violation of 30 V.I.C. § 35. (Appellant's Br. 30-31.) Again, to the extent both arguments are similar, we will briefly address the fraud claim. Section 35, by its own terms, provides that "the findings of fact by the Commission shall be conclusive unless it shall appear that such findings *of the Commission* are arbitrary, capricious or procured through fraud." 30 V.I.C. § 35 (emphasis added). Thus, Appellants' claim that fraud in the Bankruptcy Court proceedings, without more, could justify vacating the PSC's decision is contradicted by the plain text of the statute. Moreover, in their petition for reconsideration, Appellants stated that the conduct underlying the alleged "witness bribery scheme" was a "quid pro quo arrangement" in which "in return for the payment of [Arthur] Stelzer's legal fees being paid by either ICC or Vinson & Elkins (counsel for the Chapter 11 trustee), Mr. Stelzer was to appear and *truthfully* testify at the Prosser bankruptcy proceedings." (J.A. 2444 (emphasis added).) In other words, even if such a "witness bribery scheme" occurred, it would appear — based on Appellants' claims in their own petition for reconsideration — that there is no allegation that any witnesses perjured themselves during proceedings before the Bankruptcy Court or the PSC.

the application to begin the transfer of control proceedings, essentially asserts that the PSC lacked subject matter jurisdiction to consider the application for the transfer of control. Accordingly, because subject matter jurisdiction can be challenged at any time, we will consider that argument, but only to the extent that any error could have affected the PSC's jurisdiction to consider the application. Then, we will turn to the only argument made to this Court that was also made to the PSC — that the PSC failed to consider Prosser's letters.[12]

### B. The fact that the Regulated Entities failed to sign the application to begin the transfer of control proceedings did not render the PSC without jurisdiction to consider the application.

Appellants argue in their appellate brief that the Superior Court erred when it held that the Transfer of Control Agreement remained valid. Specifically, Appellants renew the claim — never made to the PSC and only made to the Superior Court in an untimely amendment to their notice of appeal — that the transfer of control proceedings were void because the application to begin the process was not "signed by the franchisee" as

---

[12] We note that in the notice of appeal to the Superior Court, the Appellants restated all six of the original arguments raised to the PSC and came up with a number of new arguments. However, at the hearing before the Superior Court, Attorney Moorhead, on his own behalf and on behalf of the Prossers, only argued ripeness and one merits issue — that the bankruptcy trustee signed the initial transfer of control request to the PSC instead of authorized agents from the cable companies which made the request invalid. That issue was not raised to the PSC — instead, the Appellants raised it for the first time on appeal to the Superior Court. Despite being asked to address the merits, Attorney Moorhead failed to address any of the six original arguments made to the PSC. The appellees request that we treat Appellants' failure to address the issue of the PSC's alleged failure to consider Prosser's letters at the hearing before the Superior Court as a waiver of that argument on appeal. While it is "well established that failure to raise an issue in the [trial] court constitutes a waiver of the argument on appeal," *V. I. Port Auth. v. Joseph*, 49 V.I. 424, 428 (V.I. 2008) (internal quotation marks and citation omitted), here the Superior Court was functioning as a court of appeals, not as a trial court. Our rules only require an issue to be raised in the original appellant or appellee brief, with proper citations to authority and argument, to avoid waiver. *See Bernhardt v. Bernhardt*, 51 V.I. 341, 345-46 (V.I. 2009). Because the issue was raised in the notice of appeal to the Superior Court, which also functioned as the appellants' brief to the Superior Court, we hold that it would be inequitable to consider the issue waived for failure to specifically address it at what amounted to the Superior Court's oral arguments.

required by section 313 of title 30,[13] and therefore contend that the PSC lacked jurisdiction to grant the application. The Superior Court found that the failure to sign the application was an "omission of a technical nature" which section 41 of title 30 states should not be the basis for finding any PSC proceeding "inoperative, illegal, or void" and thus rejected the Appellants' contentions.

■ "Ordinarily, procedural errors — no matter how egregious — will not constitute jurisdictional defects that render a judgment or order void." *In re Guardianship of Smith*, 54 V.I. 517, 526 (V.I. 2010) (citing *Morrison v. Bestler*, 239 Va. 166, 387 S.E.2d 753, 756 (Va. 1990)). "However, this Court has consistently held that when a statute establishes a specific procedure for invoking . . . jurisdiction, the failure to follow that procedure deprives the [court] of its jurisdiction." *Id.* (collecting cases). The United States Supreme Court, however, has instructed that a statute is "jurisdictional" only if "it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction," and that other statutes, even if couched in mandatory language, are not jurisdictional if they do not intend to limit the authority to hear a case. *Henderson v. Shinseki*, 562 U.S. ___, 131 S. Ct. 1197, 1202-03, 179 L. Ed. 2d 159 (2011).

■ As a threshold matter, it is not readily apparent that the Superior Court correctly applied section 41 of title 30 in rejecting Appellants' claim that the alleged failure to comply with section 313 of title 30 voided the transfer of control proceedings. Section 41 provides, in pertinent part, as follows:

> The provisions *of this chapter* shall be interpreted and construed liberally in order to accomplish the purposes thereof, and where any specific power or authority is given the Commission by the provisions *of this chapter* the enumeration thereof shall not be held to exclude or impair any power or authority otherwise *in this chapter* conferred on said Commission. . . . A substantial compliance with the requirements *of this chapter* shall be sufficient to give effect to all the rules, orders, acts, and regulations of the Commission, and they shall not be declared

---

[13] "No franchise or control thereof shall be transferred or assigned without the prior written consent of the Commission. Such consent shall be given only after a hearing upon a written application therefor. The application for consent to a transfer or assignment *shall be signed by the franchisee* and by the proposed transferee or assignee." (Emphasis added).

inoperative, illegal, or void for any omission of a technical nature *in respect thereto.*

30 V.I.C. § 41 (emphases added). Section 41, however, is included in chapter 1 of title 30, while section 313 is found in chapter 8 of title 30. In other words, it appears that section 41, by its own terms, only provides that substantial compliance with the requirements of chapter 1 will be sufficient to not render a PSC order void.

■■ Nevertheless, even if section 41 is not sufficient to extend the substantial compliance rule to section 313, the PSC's decision was not void, nor did the PSC otherwise lack jurisdiction to consider the transfer of control application. Unlike the statute at issue in *Smith,* which set forth notice and service procedures in guardianship proceedings that courts had consistently characterized as jurisdictional, courts have consistently characterized the failure of a party to sign a legal document as a technical defect that must be disregarded when — as here — there is no dispute that the party intended to endorse the document. *See, e.g., Covington v. Cole,* 528 F.2d 1365, 1369-70 & n.7 (5th Cir. 1976) ("When a court is otherwise assured that the party endorses the pleading, even a complete failure to sign has been termed a mere 'technical defect.' "); *Stanford University v. Superior Court,* 149 Cal. App. 4th 1154, 57 Cal. Rptr. 3d 755, 767 (Cal. Ct. App. 2007). Moreover, section 313 is not written in jurisdictional terms, and no other provision of chapter 8 or title 30 provides any evidence that the Legislature intended that a failure to comply with section 313's signature requirement would operate to deprive the PSC of jurisdiction to consider such an application. Accordingly, because section 313 does not impose a jurisdictional requirement, both this Court and the Superior Court are precluded, pursuant to section 33, from vacating the PSC's decision based on a violation of section 313 when Appellants failed to raise this issue in their petition for reconsideration.

## C. The Appellant's argument that the PSC never considered Mr. Prosser's letters is based on an incorrect assumption about how the PSC process works.

In their fifth argument, the Appellants assert that the factual findings of the PSC were arbitrary because they failed to consider the factual allegations included in Mr. Prosser's four letters to the PSC Chairman. The Appellants point to the Hearing Examiner's March 12, 2010 order

striking the letters from the record of his investigation. On the same day, the Hearing Examiner made his recommendations to the PSC.

■ However, the Hearing Examiner's actions *do not* bind the PSC as a whole nor limit its inquiry into allegations. Section 18 of title 30 of the Virgin Islands Code provides the PSC's statutory authority to appoint hearing examiners, and states in relevant part that

> [f]or the purpose of making any investigation with regard to any public utility the Commission shall have the power to appoint, by an order in writing, an agent whose duties shall be prescribed in such order. In the discharge of his duties such agent shall have every power whatsoever granted in this chapter to the Commission, except the power to issue any order for which a hearing is required, and said agent shall have power to administer oaths and take depositions. . . . The decision of the Commission shall be based upon its examination of all testimony and records. The recommendations made by such agents shall be advisory only, and shall not preclude the taking of further testimony, if the Commission so order, nor further investigation.

30 V.I.C. § 18. The Hearing Examiner's decision to strike the submissions from the record of his investigation does not mean, and cannot mean, that the PSC did not consider Mr. Prosser's letters. Instead, the record discloses that the Commissioners did consider Mr. Prosser's letters. The transcript of the May 5, 2010 hearing shows that the Commissioners specifically referenced Mr. Prosser's correspondence and asked about several of the issues raised in the letters. (J.A. 2264-67; 2373-75; 2379-90; 2385-86; 2390-91; 2392-93; 2395.) Despite this consideration, the PSC issued its findings of fact on the same day, clearly indicating that it did not consider any of Mr. Prosser's factual allegations meritorious.

Furthermore, the PSC considered the Prosser letters at the hearing on the petition for reconsideration. At the June 17, 2010 hearing, Attorney Moorhead specifically raised several of the allegations contained in Prosser's letters. (J.A. 3227-29 (bribery scheme allegation); 3233 (trustee's attorneys' fees); 3235 (pension plan funding).) The petition for reconsideration requested that the PSC reconsider its factual findings in the May 5, 2010 order. The PSC declined to do so by denying the petition. Because the PSC clearly considered the letters in reaching its decision, we

cannot, as appellants urge, find any error based on a failure to consider those letters.[14]

## IV. CONCLUSION

By operation of 30 V.I.C. § 33, the Appellants foreclosed review of all but one of their host of arguments by not raising them in the petition for reconsideration originally brought before the PSC. The only issue adequately before this Court, that the PSC issued arbitrary findings of fact by failing to consider letters written by Mr. Prosser, is based on a flawed premise, because the record indicates that the PSC did, explicitly, consider those letters. Therefore, we affirm the Superior Court's September 14, 2010 order.

---

[14] We do not hold that the PSC must put on the record consideration and debate of every public submission to avoid having their findings of fact labeled "arbitrary." Because we find that the PSC did consider Mr. Prosser's letters, we do not reach the question of whether failure to do so would have been arbitrary.