**SAMUEL OTTLEY, Appellant/Plaintiff**

**v.**

**ESTATE OF VIOLA ELFREDA BELL a/k/a VIOLA BELL, a/k/a VIOLA
ELFREDA OTTLEY, a/k/a VIOLA ELFREDA BELL OTTLEY, a/k/a
VIOLA BELL OTTLEY, a/k/a VIOLA OTTLEY and EBONI OTTLEY
and DELROY GERARD, Appellees/Defendants**

S. Ct. Civil No. 2013-0097

Supreme Court of the Virgin Islands

October 29, 2014

DOLACE MCLEAN, ESQ., Visions Law Firm, St. Thomas, USVI, *Attorney for Appellant.*

DAVID A. BORNN, ESQ., The Bornn Firm, PLLC, St. Thomas, USVI, *Attorney for Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and CARROLL III, *Designated Justice.*[1]

## OPINION OF THE COURT

(October 29, 2014)

HODGE, *Chief Justice.* Samuel Ottley ("Ottley") and Viola Bell Ottley ("Bell") each owned a one-half interest in a piece of real property. After Bell's death, Ottley initiated an action for partition in the Civil Division of the Superior Court. The Superior Court dismissed Ottley's action for lack of subject-matter jurisdiction for failure to present his claim to the administrator of Bell's estate pursuant to section 606(b) of title 15 of the Virgin Islands Code before filing suit. We reverse.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On April 15, 1987, the Family Division of the Superior Court granted Ottley and Bell a divorce and awarded each a 50 percent equitable interest in Parcel No. 215-91 Estate Anna's Retreat, No. 1 New Quarter, St. Thomas, Virgin Islands. The divorce decree also set forth the conditions, benefits, and responsibilities placed upon each party in regards to the property. Specifically, the divorce decree granted Bell "exclusive use and occupancy of the property" until their daughter, Eboni Ottley ("Eboni"), became 18 years of age or completed high school. Thereafter, Ottley had

---

[1] Associate Justice Ive Arlington Swan is recused from this matter; the Honorable James S. Carroll III, a retired judge of the Superior Court, has been designated to sit in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

the "right of first refusal to purchase [Bell's] 50% equitable interest at market value" or, if neither party could purchase the other's equity, then the property was to "be sold and the proceeds, after expenses, . . . divided equally between [Bell and Ottley]."

Bell died on July 24, 2001, and was survived by her daughter, Eboni, and her son, Delroy Gerard.[2] Eboni was appointed as the administrator[3] of Bell's estate on September 3, 2002. Ottley sought the partition of the Anna's Retreat property by filing a complaint in Superior Court on February 23, 2006, and an amended complaint on March 21, 2006. Ottley named Bell's estate, Eboni, and Gerard (collectively, "Appellees") as defendants in the action. Ottley also requested that any award to Bell's heirs be reduced by the amounts Ottley had paid in real property taxes, insurance premiums, and mortgage payments without Bell's assistance. On December 7, 2006, the Superior Court entered defaults against Appellees.

In May 2008, more than one year after filing his partition action, Ottley presented his claim of $60,000 for real property taxes, insurance premiums, mortgage payments, and any other expenses related to Parcel No. 215-91 Estate Anna's Retreat — but not his claim for partition — to the administrator. This claim was eventually rejected by the administrator on June 21, 2012.

On July 31, 2008, approximately two months after Ottley filed his claim with Bell's estate, Appellees' attorney entered an appearance in the action for partition, and filed a joint answer and a motion to lift the defaults that were entered in the partition action on December 7, 2006. The Superior Court vacated the defaults on February 25, 2009. Soon thereafter, Appellees moved the court in the partition action to dismiss Ottley's complaint for lack of subject-matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to join an

---

[2] Delroy Gerard is Bell's son from a prior marriage and an heir to her estate.

[3] Eboni Ottley is identified as the "Administratrix" of Bell's estate in court documents, but this form is "becoming obsolete, since administrator [is] considered gender-neutral." BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE 214 (2d ed. 2002); see V.I.S.CT. I.O.P. App'x § I (A) (this Court should refer to THE REDBOOK for guidance on matters of legal style). Furthermore, REDBOOK § 12.5 states that "[w]hen possible, avoid using titles that have increasingly archaic feminine suffixes (such as -ess, -ette, or -ix) or that use man as a suffix or prefix." Id. at 316 (suggesting the use of "administrator" instead of "administratrix").

indispensable party. Appellees filed a second motion to dismiss on October 5, 2011. Both Ottley and the Superior Court failed to respond to either motion, prompting Appellees to file an informational motion on September 3, 2013, requesting that the court issue a decision on Appellees' two outstanding motions. In an October 8, 2013 memorandum opinion, the court held that Appellees' motion to dismiss based on failure to state a claim and for failure to join an indispensable party were not properly before it because the motion was filed after Appellees filed their answer. However, the court agreed with Appellees that section 606(b) of title 15 created a statutorily-mandated condition precedent and therefore concluded that the Superior Court was not vested with subject-matter jurisdiction until after the administrator disallowed Ottley's claim and, since the statute was jurisdictional, such error could not be cured by a supplemental or amended complaint. Thus, the court granted Appellees' motion to dismiss for lack of subject-matter jurisdiction. Ottley timely appealed the Superior Court's decision to this Court on October 31, 2013. *See* V.I.S.CT.R. 5(a)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). The Superior Court's October 8, 2013 order constitutes a final appealable judgment because it resolved all issues against Appellees by dismissing all of Ottley's claims for lack of subject-matter jurisdiction. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 434 (V.I. 2013) (an order "resolving all outstanding claims between the parties" is a final order for purposes of 4 V.I.C. § 32(a)).

"[T]his Court exercises plenary review over questions relating to the Superior Court's subject matter jurisdiction." *Brunn v. Dowdye*, 59 V.I. 899, 904 (V.I. 2013) (citing *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 399 (V.I. 2008)).

### B. Section 606

Appellees filed their motion to dismiss based on Ottley's failure to comply with section 606(b) after they had already filed an answer to his

complaint. Ottley never responded to Appellee's motion to dismiss,[4] and in an October 8, 2013 memorandum opinion, the Superior Court determined that compliance with section 606(b) was jurisdictional and granted Appellees' motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[5] Therefore, to ascertain whether Appellees' motion was properly granted, this Court must determine whether section 606(b) establishes a jurisdictional requirement or merely codifies a claims-processing rule. This decision "is not merely academic, for a claims-processing statute may be equitably tolled or judicially modified" or waived if not raised at the first opportunity. *Allen*, 59 V.I. at 435-36 (citation and internal quotation marks omitted); *Brady v. Cintron*, 55 V.I. 802, 817 n.15 (V.I. 2011) (a non-jurisdictional defense "may be waived if not timely asserted by a defendant or equitably modified by a court") (citing *Jensen v. V.I. Water & Power Auth.*, 52 V.I. 435, 442 (V.I. 2009)); *Kontrick v. Ryan*, 540 U.S. 443, 456, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004) ("Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point.").

### 1. *Section 606(b) is a mandatory claims-processing rule*

■ The Virgin Islands Legislature granted the Superior Court original jurisdiction "in all civil actions" and "to supervise and administer estates

---

[4] Appellees dedicate a significant portion of their brief to arguing that because Ottley did not respond to their motion to dismiss for lack of subject-matter jurisdiction, this Court should consider the issues raised in this appeal waived. But even though Appellees are correct that the failure to raise an argument before the Superior Court typically constitutes waiver under Supreme Court Rules 4(h) and 22(m), "[t]his Court has repeatedly cautioned that parties may not, through explicit agreement or implicitly by omission, stipulate to the law." *Simmonds v. People*, 59 V.I. 480, 493 (V.I. 2013) (citing *Rohn v. People*, 57 V.I. 637, 643 (V.I. 2012)). This is especially true "where a decision by this Court 'may unfairly and unjustifiably affect the disposition of other cases.' " *V.I. Narcotics Strike Force v. Pub. Emps. Relations Bd.*, 60 V.I. 204, 211 (V.I. 2013) (quoting *Garcia v. Garcia*, 59 V.I. 758, 774 (V.I. 2013)). Refusing to apply waiver is particularly appropriate here since Appellees' motion challenged the Superior Court's jurisdiction, and "it is well established that parties may not stipulate to either the presence or absence of subject matter jurisdiction." *Williams v. People*, 58 V.I. 341, 346 n.4 (V.I. 2013) (citing *H & H Avionics, Inc. v. V.I. Port Auth.*, 52 V.I. 458, 460 (V.I. 2009)).

[5] Federal Rule of Civil Procedure 12(b) is made applicable to the Superior Court by Superior Court Rule 7. *See* SUPER. CT. R. 7.

and fiduciary relations." 4 V.I.C. § 76(a). It has limited the court's authority in certain situations, by enacting statutes that restrict either the court's subject-matter or personal jurisdiction. *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 131 S. Ct. 1197, 1202-03, 179 L. Ed. 2d 159 (2011)). Other statutes are not jurisdictional but instead are claims-processing, and "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* In some instances it is clear that a statute is jurisdictional because the Legislature explicitly stated that the statute either gives or limits jurisdiction. *See, e.g., Prosser v. Public Servs. Comm'n of the U.S.V.I.*, 56 V.I. 391, 401 (V.I. 2012) (the language the Legislature used in 30 V.I.C. § 33 explicitly limits the Superior Court's jurisdiction by mandating that any alleged error in a decision by the Public Services Commission of the United States Virgin Islands ("PSC") must first be raised to the PSC before it can be appealed to the courts); *Gov't of the V.I. v. Crooke*, 54 V.I. 237, 246 (V.I. 2010) (3 V.I.C. § 530a(a) explicitly grants the Superior Court appellate jurisdiction over any Public Employees Relations Board's final order); 4 V.I.C. § 76. In other instances, we must look at the statute's structure or "long-standing judicial precedent" to determine its scope. *Brady*, 55 V.I. at 815 (citing *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 524, 392 U.S. App. D.C. 202 (D.C. Cir. 2010)).

■ ■ As stated, the Superior Court has original jurisdiction over probate matters. 4 V.I.C. § 76(a). Explicitly, the Superior Court[6] "has jurisdiction and the power to administer justice in all matters relating to the affairs of decedents, . . . to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, . . . as to any and all matters necessary to be determined in order to make a full, equitable, and complete disposition of the matter by such order or

---

[6] Although 15 V.I.C. § 161 continues to read that "the *district court* has jurisdiction and the power to administer justice in all matters relating to the affairs of decedents," the Legislature granted the Superior Court "original jurisdiction . . . to supervise and administer estates" in 1990, thereby removing the District Court's jurisdiction over such matters. 4 V.I.C. § 76(a); *see In re Rogers*, 57 V.I. 553, 558 n.1 (V.I. 2012). Therefore, the reference to the District Court in § 161 — like most references to the District Court in the Virgin Islands Code enacted before the Legislature adopted 4 V.I.C. § 76 — "ha[s] been implicitly repealed." *In re Reynolds*, 60 V.I. 330, 333 n.3 (V.I. 2013) (citing *In re Rogers*, 57 V.I. at 558 n.1).

decree as justice requires."[7] 15 V.I.C. § 161. The court is unrestricted in its power to dispose of such cases "as justice requires" and is explicitly authorized to grant letters of administration, direct and control an executor or administrator's conduct, distribute assets, and order the sale of the deceased person's property. *Id.*

The probate statutory scheme is located in chapters 11 through 29 of title 15 of the Virgin Islands Code, which, if followed correctly, ensures the orderly and efficient distribution of a decedent's property by establishing the process by which an estate is to be opened, administered, and closed. Once an estate is opened, the executor or administrator must immediately publish a notice in multiple public places alerting "all persons having claims against the estate to present them . . . within six months from the date of the notice" to the executor or administrator. 15 V.I.C. § 391. Creditors who present their claims against the estate within the first six months of the notice publication date have priority over other claims presented after the initial six months, if the executor or administrator verifies that the claim is "justly due." 15 V.I.C. § 393; *see* 15 V.I.C. § 392. Once "satisfied that the claim thus presented is just," the executor or administrator must "pay such claim in due course of administration," or reject the claim if "not so satisfied." 15 V.I.C. § 394. Disbursements should be made to creditors every three months.[8] 15 V.I.C. § 421(a). Although creditors may present claims after the six month period lapses — until the time the estate is closed — these claims "shall not be paid until the claims presented within [the six month] period have been satisfied," and even then are to be paid only "out of any assets then in the hands of the executor or administrator not otherwise appropriated or liable." 15 V.I.C. § 392; *see In re Estate of Small*, 57 V.I. 416, 422 (V.I. 2012) ("A creditor may [still] make a claim against the estate after the six month [period] has passed, but is subject to penalties in the priority of

---

[7] The Legislature also specifically authorized magistrates to hear probate matters. 4 V.I.C. § 123(a)(4) ("Each magistrate may . . . hear . . . probate matters.").

[8] Within each three month disbursement, priority among creditors is established by 15 V.I.C. § 421. Should funds be insufficient to pay all claims and charges during a three month period, claims with the highest priority are to be paid first. 15 V.I.C. § 423. If funds are insufficient to pay all claims in the same class according to the priority established in section 421, then each creditor shall be paid in proportion to the amount of his claim. *Id.* Also, debts established by judgment against the deceased during the deceased's lifetime may be satisfied "from the proceeds of the sale of the property." 15 V.I.C. § 422.

payment by the estate."). Thus, the longer a creditor waits to present a claim against an estate, the probability of recovering on a valid claim decreases.

Should the executor or administrator deny a creditor's claim, the creditor "may present his claim to the court . . . [to] hear and determine in a summary manner all demands against any estate . . . which have been so rejected." 15 V.I.C. § 395. Should the court allow the claim, then the claim must "be satisfied in due course of administration" "as if it had been allowed by [the executor or administrator,]" indicating that the creditor maintains the priority he acquired from the time he presented the claim to the executor or administrator. 15 V.I.C. § 396. This route is especially preferable for creditors who failed to present their claim within the first six months, for while creditors who filed their claims within the first six months would retain their original priority, those creditors who submit a claim after the six month mark and then decide to file a separate civil suit would lose any priority their claims may have had and can only recover from "the assets in [the executor or administrator's] hands at the time the summons is served." 15 V.I.C. § 606(b). Section 606 governs when an action may be brought against an estate's executor or administrator, and is the subject of this appeal. In its entirety, section 606 provides:

> (a) An action may be commenced against an executor or administrator at any time after the expiration of twelve months from the granting of letters testamentary or of administration and until the final settlement of the estate and discharge of such executor or administrator from the trust, and not otherwise.
>
> (b) An action against an executor or administrator shall not be commenced until the claim of the plaintiff has been duly presented to such executor or administrator and by him disallowed. If such claim is presented after the expiration of the period of six months mentioned in sections 391 and 392 of this title, the executor or administrator in an action therefor shall only be liable to the extent of the assets in his hands at the time the summons is served upon him.

15 V.I.C. § 606.

Section 606(a) clearly authorizes a plaintiff to commence an action against an estate's executor or administrator in the Superior Court, and mandates that at the time of commencement (1) the estate have been open

for a minimum of twelve months, and (2) the executor or administrator's duties in administering the open estate are ongoing. 15 V.I.C. § 606(a). Section 606(b) imposes an additional limitation, requiring that all claims against the estate must first be presented to the executor or administrator, and then disallowed, before filing an action in court. The Appellees argue, and the Superior Court agreed, that section 606(b) is a jurisdictional limit to the court's authority. However, we hold that section 606 is an inflexible claims-processing rule that cannot be waived.

The Superior Court relied on this Court's prior interpretation of the language "shall not be commenced until" from section 166i of the Virgin Islands Medical Malpractice Act ("MMA") as a jurisdictional barrier. *Brady*, 55 V.I. at 812-17. It held that similar language in section 606 acted as a prohibition on initiating legal action until the claim was first presented to, and duly rejected by, the estate's administrator or executor. However, the Superior Court did not consider similar language used in other statutes. For example the "shall not be commenced" language in section 606(b) likewise resembles the language used in the statute governing the Virgin Islands statute of limitations, which we have previously determined is an affirmative defense that may be waived if not raised at the first opportunity. 5 V.I.C. § 31 ("Civil actions *shall only be commenced* within the periods prescribed below. . . .") (emphasis added); *Allen*, 59 V.I. at 436 (quoting *In re Guardianship of Smith*, 54 V.I. 517, 524 n.5 (V.I. 2010)). Also, unlike section 166i, no other language in section 606(b) indicates that the Legislature intended for this provision to act as a jurisdictional barrier to court review.

In *Brady*, we determined that section 166i was jurisdictional by looking not only to the statute's language and structure, but also to the statute's historical purpose and decisions by other courts interpreting it and other similar statutes. 55 V.I. at 815-16 (legislative intent may be "discerned by looking to the . . . text, context, and relevant historical treatment" of the statutory prerequisite (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010))). We focused on the fact that section 166i requires that a "proposed complaint" be filed with the statutorily-established Medical Malpractice Action Review Committee ("the Committee") before an action is commenced in court, clearly indicating the Legislature's intent that the courts were not to be utilized until after the Committee had an opportunity to address the claim itself. *Id.* at 816. We also looked at the purpose of the

statute and explained that interpreting section 166i "as anything less than a limitation on the subject matter jurisdiction of the [] court would be inconsistent with the overall statutory objectives" the MMA attempts to achieve. *Id.* (quoting *Berry v. Curreri*, 837 F.2d 623, 626 (3d Cir. 1988)).

■■ ■■ In this case, despite the similar "shall not be commenced" language in sections 606(b) and 166i, the context surrounding each statute mandates different results. The purpose behind the MMA was "to prevent actions from being filed in courts until after the statutory requirements of the MMA are fulfilled." *Brady*, 55 V.I. at 813. The Committee was created for the express purpose of reviewing and investigating all claims independently and to make a recommendation as to whether the claim is meritorious. *Id.* at 813-14. In essence, the goal of the MMA is to avoid any court involvement. In contrast, the administration of an estate must involve the court. *See* 15 V.I.C. § 191 (permitting heirs to petition the court to settle an estate without administration where decedent dies intestate); 15 V.I.C. § 233 (issuance of letters testamentary); 15 V.I.C. § 236 (granting the court discretion to choose an administrator of an intestate's estate); 15 V.I.C. § 240 (revocation of letters). The executor or administrator of an estate acts as an arm of the court, *see* 15 V.I.C. § 312 (the executor or administrator shall "make and file with the clerk of the court an inventory . . . of all the real and personal property of the deceased"); 15 V.I.C. § 394 (the executor or administrator "shall every three months file with the court a statement of all such claims as have been presented"), and the court has a responsibility to "exercise a supervisory control over the executor or administrator, to the end that he faithfully and diligently perform the duties of his trust according to law." 15 V.I.C. § 240(c). Thus, unlike section 166i, when a person dies, the distribution of that person's property must, at a minimum, invoke the jurisdiction of the court. 15 V.I.C. § 167 (administration of an estate in a summary manner).

■■ The Legislature has outlined in detail the duties of a executor or administrator in administering an estate and the process by which a creditor should seek to satisfy his claim, all under the guidance and review of the Superior Court. *See* 15 V.I.C. § 394; 15 V.I.C. § 240(c). Therefore, when looking at section 606 in the context of the entire probate scheme, it appears the Legislature intended section 606 "to regulate the process of obtaining review" by providing strict guidance for probate proceedings and it did not intend "to limit the court's adjudicatory

authority."[9] *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 426 (V.I. 2013). By requiring that the executor or administrator have the first opportunity to decide whether a plaintiff's claim is meritorious, and in providing an alternative avenue for prompt summary review through the probate proceedings, it is clear that the Legislature intended creditors to file suits outside of the probate proceedings as an option of last resort. 15 V.I.C. § 606(b); *see Bramwell v. Heseltine*, 122 Ore. 519, 259 P. 1063, 1063-64 (1927) (holding the intent behind an almost identical statute is "to protect the estate of the deceased person from litigation over claims, which if properly presented might be allowed and paid by the executor or administrator without action").

The Oregon Supreme Court[10] interpreted Oregon's nearly identical statute — section 115.325 of the Oregon Revised Statutes, which requires a creditor to present his claim to the executor or administrator before filing an action with the court[11] — to be non-jurisdictional. *Balthrop v. Berryman*, 96 Ore. App. 354, 772 P.2d 955, 956-57 (1989) (holding that although section 115.325 is non-jurisdictional, failure to present a claim to the estate's executor or administrator constituted an

---

[9] Although section 606 has acted as a bar to successfully bringing suit in two prior Virgin Islands cases — *Oat v. Sewer Enters.*, 46 V.I. 286, 290 (D.V.I. 2004) and *Island Green, LLC v. Querrard*, 429 Fed. Appx. 90, 92 (3d Cir. 2011) — neither case explicitly holds that section 606 is jurisdictional, nor are their holdings binding on this Court. *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 974-76 (V.I. 2011). They are merely persuasive authority, which we decline to follow in favor of the more persuasive argument that such a statute is a claims-processing rule. *Stevens v. Scanlon*, 248 Ore. 229, 430 P.2d 1019, 1020 (1967); *Fay v. McConnell*, 229 Ore. 128, 366 P.2d 327, 328 (1961).

[10] When statutes from other jurisdictions are substantially similar to a Virgin Islands statute, this Court may look for guidance at how that jurisdiction's courts have interpreted the similar statute. *See Nicholas v. People*, 56 V.I. 718, 734-35 (V.I. 2012) (relying on other courts' interpretations of a nearly identical federal statute to interpret section 922 of title 14 of the Virgin Islands Code); *In re Disbarment of Plaskett*, 56 V.I. 441, 447 (V.I. 2012); *Brady*, 55 V.I. at 815-16 (relying on Indiana's interpretation of a statute with almost identical language to a Virgin Islands statute).

[11] Oregon's statute currently reads that "no action against a personal representative on account of a claim shall be commenced until the claim of the plaintiff has been presented to and disallowed by the personal representative." OR. REV. STAT. § 115.325. An earlier version of the statute, which was the basis for Oregon's earlier cases on the issue, was substantially similar: "[a]n action against an executor or administrator shall not be commenced until the claim of the plaintiff has been duly presented to the executor or administrator, and by him rejected." *Fay*, 366 P.2d at 328 (quoting former OR. REV. STAT. § 121.090).

insufficiently pleaded complaint "for failure to state ultimate facts sufficient to constitute a claim" (citing *Meissner v. Murphy*, 58 Ore. App. 174, 647 P.2d 972, 973 (1982))); *Stevens v. Scanlon*, 248 Ore. 229, 430 P.2d 1019, 1020 (1967) (holding that "presentation of a claim to an executor and the executor's rejection of the claim is not jurisdictional but a matter of abatement only"); *Fay v. McConnell*, 229 Ore. 128, 366 P.2d 327, 328 (1961) (observing that "[f]acts showing that an action is prematurely brought" does not indicate a jurisdictional defect and "such [an] objection must be raised by plea or answer in abatement" or by demurrer).

▉▉▉▉ Like the Oregon Supreme Court, we conclude that section 606 is a claims-processing rule and does not govern the Superior Court's jurisdiction to adjudicate an action brought in derogation of section 606. Nevertheless, unlike a statute of limitations or other affirmative defenses, we find that section 606 is an inflexible claims-processing rule that cannot be waived. Claims-processing rules may be non-waivable when "the rule implicates judicial interests beyond those of the parties." *Mustafa v. Camacho*, 59 V.I. 566, 571 n.2 (V.I. 2013) (internal quotation marks and citation omitted); *see Peters v. People*, 60 V.I. 479, 484 (V.I. 2014) (*sua sponte* raising and enforcing Supreme Court Rule 5(b)(1) since the 30-day filing deadline promotes "society's legitimate interest in the finality of a judgment . . . perfected by the expiration of the time allowed for direct review" (quoting *United States v. Frady*, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982))); *Eberhart v. United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005) (some claims-processing rules are "inflexible"). A creditor must follow the process outlined in section 606 in order to properly file a complaint in the court against an estate. Failure to do so does not remove the case from the court's jurisdiction, but simply requires the court to dismiss it for failure to state a claim upon which relief may be granted. *See Balthrop*, 772 P.2d at 956-57. This ensures that a creditor cannot bypass the probate process enacted by the Legislature, and relieves the executor or administrator from defending the estate's rights in both a civil action and through probate proceedings simultaneously. It also ensures that a creditor will not serve the executor or administrator with a summons in an attempt to gain priority over estate assets to the detriment of other creditors who properly followed the

probate process and presented a claim within the first six months.[12] *See Kontrick*, 540 U.S. at 458 n.12 ("[A] debtor and creditor may [not] stipulate to the assertion of time-barred claims when such an accommodation would operate to the detriment of other creditors."); 15 V.I.C. § 606(b) (the executor or administrator is "liable to the extent of the assets in his hands at the time the summons is served upon him"). Finally, holding that section 606 is a non-waivable claims-processing rule serves the interests of judicial economy by promoting the overall statutory objective of completing probate proceedings within one year. *Cf. In re Estate of George*, 59 V.I. 913, 924-25 (V.I. 2013) (discussing 15 V.I.C. § 353, which allows support payments to a widow during probate proceedings for only one year).

■■ ■■ In this case, Ottley did not present his claim to the administrator before he filed suit on February 23, 2006. However, he did present his claim for reimbursement of the alleged $60,000 debt to the administrator on May 28, 2008. Although the Superior Court concluded that the administrator formally denied Ottley's claim on June 21, 2012, the claim was effectively denied on August 28, 2008, when the administrator failed to act on the claim within three months after presentment.[13] *See* 15 V.I.C. § 421 (directing the executor or administrator to make distributions in three-month intervals). Therefore, Ottley's claim had ripened by the time the Superior Court dismissed it.[14] The Superior Court's dismissal of the action on the claim for reimbursement after it had ripened was pointless as Ottley could have

---

[12] As a claims-processing rule, compliance with section 606 is subject to equitable remedies at the court's discretion. *See, e.g., Mustafa*, 59 V.I. at 571 n.2 ("[T]he $50.00 filing fee established by Superior Court Rule 322.1 does not codify a jurisdictional requirement, but represents a mandatory claims-processing rule that is potentially subject to waiver."). So, for example, while the parties cannot agree to waive any of section 606's requirements, in certain circumstances a court may properly find that an administrator forfeited the right to raise section 606 as a defense due to equitable considerations.

[13] The Superior Court took judicial notice that the administrator disallowed the claim on June 21, 2012. However, if a plaintiff cannot bring a civil suit until his claim is explicitly rejected by the administrator, the administrator would effectively have the power to indefinitely postpone the commencement of litigation.

[14] In light of this holding, we do not address whether the Superior Court could have set aside the requirements of section 606 on equitable grounds in this case.

promptly refiled the action.[15] *Rohn v. People*, 57 V.I. 637, 642 n.4 (V.I. 2012) (observing that "subsequent events may ripen a prematurely filed appeal" (quoting *Harvey v. Christopher*, 55 V.I. 565, 571 (2009)); *see Alejandro-Ortiz v. Puerto Rico Elec. Power Auth.*, 872 F. Supp. 2d 133, 136 (D.P.R. 2012) (holding that court's decision to dismiss the action because it was prematurely filed was pointless because the matter automatically ripened after 90 days and plaintiff could just refile complaint). Because Ottley could have immediately refiled the complaint, and the law does not generally require a useless act, the Superior Court erred in dismissing Ottley's complaint for the $60,000 debt on the basis of noncompliance with section 606(b).[16] *See Alejandro-Ortiz*, 872 F. Supp. 2d at 136 (citing *Waterman Steamship Corp. v. Rodriguez*, 290 F.2d 175, 177-78 (1st Cir. 1961)).

### 2. *Presentment requirement for partition of property*

Ottley's request for partition was never presented to the administrator and thus, did not ripen before the Superior Court dismissed the civil suit. Ottley argues that he was not required to present the claim for partition to the administrator before filing suit because, as a tenant in common, he has a personal right to initiate an action for partition in the Superior Court at any time.[17] The Superior Court disagreed with Ottley and held that he was

---

[15] Unlike *Brady* — where the plaintiff was barred from filing a new complaint because the statute of limitations had expired, 55 V.I. at 817 — Ottley has complied with section 606(b)'s requirements while Bell's estate remains open and the administrator has not been discharged. 15 V.I.C. § 606(a). However, should Ottley prove he is legally owed the entire $60,000, he may only recover up to the amount of unclaimed assets, if any, that were still in the administrator's hands "at the time the summons [was] served upon [her]." 15 V.I.C. § 606(b); *see also* 15 V.I.C. § 392.

[16] In this particular case, because Ottley did not follow the probate code to his own detriment, the administrator would only be liable up to the amount of unclaimed assets in her hands at the time the civil suit *ripened*, instead of the date the summons was served on her. Furthermore, we make no determination as to whether the refiled action would have been timely within the applicable statute of limitations period, and hold only that section 606 could not have been raised to bar the refiled complaint. *See* 15 V.I.C. § 392 ("[A] claim against the estate not barred by the statute of limitations may be presented, allowed, and paid.").

[17] This Court accepted an *amicus curiae* brief by Alester A. Garvy and Lionel Lewis, and granted their request to participate in oral arguments. *Ottley v. Estate of Bell*, S. Ct. Civ. No. 2013-0097, slip op. at 3 (V.I. Mar. 4, 2014); *Ottley v. Estate of Bell*, S. Ct. Civ. No. 2013-0097, slip op. at 1 (V.I. Apr. 15, 2014) (granting amici five minutes to present arguments). Both the parties and the amici urged this Court to determine the scope of the magistrate's

required to comply with section 606(b) before bringing a separate civil suit because the property in question was also listed as an asset of Bell's estate, which was being overseen by a magistrate in a probate proceeding. On appeal, Ottley argues that an action for partition is a civil matter and therefore, while the property may be related to the settlement of Bell's estate, section 606 is inapplicable to his case because an action for partition does not seek to recover anything from a decedent's estate. Ottley further asserts that a magistrate hearing a probate proceeding does not possess exclusive or concurrent jurisdiction to address claims for partition and thus, the Superior Court judge could not transfer the action for partition to the magistrate as part of the probate proceeding.

 We agree that an action for partition is not a "claim" that is required to be presented to an estate's executor or administrator under section 606. Section 606(b) specifically states that all "claims" must be presented to an estate's executor or administrator. It then references sections 391 and 392 of title 15 as the basis for limiting the amount that a executor or administrator may be liable for. Section 391 requires "all persons having *claims against the estate* to present them, with the proper vouchers, within six months from the date of the notice [that the estate is under administration]." 15 V.I.C. § 391 (emphasis added). Section 392 states that "a *claim against the estate* not barred by the statute of limitations may be presented, allowed, and *paid out of any assets* then in the hands of the executor or administrator not otherwise appropriated or liable." 15 V.I.C. § 392 (emphasis added). It is apparent from both of these sections, as well as the remainder of chapter 23 of title 15, that "claims" contemplates the debts that the deceased incurred during their lifetime and which a creditor is attempting to recover from the estate. *See In re Estate of Small*, 57 V.I. 416, 422 (V.I. 2012) ("A creditor may . . . [still] make a claim against the estate after th[is] six month . . . [period] has passed, but is subject to penalties in the priority of payment by the estate.").

 An action for partition is not an attempt to recover debt or property from an estate. As cotenants, Ottley and Bell each own an undivided one-half interest in the property with concurrent rights to

<hr />

jurisdiction to hear real property disputes when the property is listed in a decedent's estate in a probate proceeding, an issue we will address in this opinion.

possess the property.[18] *George v. George*, 59 V.I. 1092, 1102 (D.V.I. 2013) ("A tenancy in common is the joint ownership of real property 'by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property.' " (quoting BLACK'S LAW DICTIONARY 1604 (9th ed. 2009))). The mere fact that Bell's one-half interest in the property is listed as an asset of her estate does not affect Ottley's interest in the same property. 59A AM. JUR. 2D *Partition* § 44 ("[D]eath of a cotenant neither terminates nor suspends the right of the surviving cotenants."). As such, Ottley retains all of the rights and benefits of a property owner, including the right to partition the property.[19] *See* 28 V.I.C. § 451 (allowing a cotenant to bring an action to partition property). Furthermore, the party's divorce decree specifically permitted the sale of the property at any time after the parties' child turned 18 or graduated from high school, with the proceeds of the sale being divided equally. In requesting that the property be partitioned, Ottley merely exercised the right granted to him by the Superior Court in the divorce decree and his innate right as a tenant in common to use the land to his benefit. *See Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 591-93 (V.I. 2014) (construing covenant attached to property in a manner that promoted the free use of land to achieve the greatest benefit).

This case is analogous to *Ames v. Ames*, 170 Kan. 227, 225 P.2d 85, 87 (1950). In that case, a mother and her two sons were cotenants of a piece

---

[18] According to Ottley and Bell's divorce decree, Bell had exclusive use and occupancy of the property until their daughter attained 18 years of age or completed high school. Ottley's inability to concurrently possess the property before that time has no bearing on the outcome of this case, as it is undisputed that Ottley and Bell held the property together as tenants in common.

[19] Such an action would normally be initiated in the Civil Division of the Superior Court. 28 V.I.C. § 451. Magistrates are generally not authorized to hear disputes regarding the ownership of real property. *See* 4 V.I.C. § 123 (outlines the Magistrate Division's jurisdiction and powers). Section 123(d) — which authorizes a magistrate to hear any case upon the "consent of the parties and approval of the Presiding Judge" — is inapplicable in this case as consent of all parties was clearly not obtained nor did the Presiding Judge approve such action. While a magistrate may have the authority to divide and sell the decedent's interest in real property when hearing a probate matter, *see* 15 V.I.C. § 161(5), a magistrate does not have the authority to sell or divide a cotenant's interest in the same property. *See Buckley v. Super. Ct. of San Francisco Cnty.*, 102 Cal. 6, 36 P. 360, 360 (1894) ("The court, while sitting as a court of probate, has no other powers than those given to it by the statute, and such incidental powers as pertain to it for the purpose of enabling it to exercise the jurisdiction which is conferred upon it. It has no power to determine disputes between heirs or devisees and strangers as to the title to property.").

of real property. After the mother died and her estate opened in probate court, one of her sons filed a separate action for partition of the property and for reimbursement of the costs expended to improve the land over the years. The Kansas Supreme Court determined that because the son had an existing interest in the property, he "occup[ied] the same position as complete strangers would occupy towards decedent's estate" and was within his rights as cotenant to request the court to divide up the property outside of the probate proceedings, despite the fact that the property was listed as an asset of the mother's estate. *Id.*

Ottley correctly named Bell's estate as the defendant, and although not necessary, additionally listed the two heirs entitled to inherit her interest in the property. *Weaver v. Laub*, 1977 OK 242, 574 P.2d 609, 611 n.3 (1977) (naming the administrator of the estate, rather than the decedent's heirs, was sufficient in petition for partition because "it is the function of the probate proceeding to determine heirs at law, and not the function of a partition proceeding"). It is immaterial that Ottley brought the action for partition after her estate was being probated. Although a party could wait for a determination of who receives how much of a decedent's interest in some property, it is not a prerequisite to the Superior Court dividing the property according to the cotenants' interests as they stand and deciding the most appropriate equitable method of partitioning it.[20] *See Weaver*, 574 P.2d at 611 n.3 ("The court in the partition proceeding could have merely indicated the interests of all the parties, other than the heirs at law, then indicate what interests in the land, if any, should be included in [the decedent's] estate, allowing the probate court to divide that interest appropriately."); 59A AM. JUR. 2D *Partition* § 44 ("The court hearing the partition action may first declare the share belonging to the decedent, and then leave the determination of the heirs and their proportionate shares of the estate's share for the probate court."). In this case, after the Superior Court partitions the property, the probate judge or magistrate would then have the duty of dividing Bell's interest among her heirs as part of the probate proceeding.

Allowing a cotenant to bring an action for partition apart from a probate proceeding dealing with the same property allows the cotenant to

---

[20] In this case, the most equitable partition may be to sell the property and divide the proceeds equally between Ottley and Bell's estate, as mandated in the divorce decree since neither party exercised the option of buying out the other's interest.

exercise full ownership of his share of the property and promotes the free use of land. This is especially important in a case such as this where, for reasons not apparent in the record, the probate of Bell's estate has still not been closed, more than 13 years after her death and 12 years after its commencement in September 2002. Without the ability to partition the property prior to the close of Bell's estate, Ottley's right to freely use his property to attain its greatest benefit and prevent waste could be significantly curtailed for an even longer duration. Therefore, we hold that an action for partition is not a "claim" within the meaning of section 606, and thus it need not be presented first to an estate's executor or administrator before commencing an action for partition in Superior Court.

## III. CONCLUSION

Therefore, because the Superior Court erred in granting Appellees' motion to dismiss, we reverse the Superior Court's decision and remand the case for reinstatement so that the court can adjudicate Ottley's action for partition and the ancillary debt of $60,000.